**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION**

| | |
|---|---|
| THE CITY OF BRISTOL, TENNESSEE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No.: 1:22-cv-00023-JPJ |
| THE CITY OF BRISTOL, VIRGINIA, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**DEFENDANT'S MEMORANDUM IN REPLY IN SUPPORT OF ITS PARTIAL
MOTION TO DISMISS**

Defendant The City of Bristol, Virginia ("Bristol VA"), by counsel, states as follows in reply in support of its Partial Motion to Dismiss Plaintiff The City of Bristol, Tennessee ("Bristol TN")'s Complaint.

**INTRODUCTION**

By crafting the Virginia Waste Management Act, the Virginia General Assembly created "all-embracing coverage" that occupies the field for occurrences related to odors, gas emissions, and seapage from landfills permitted by the Virginia Department of Environmental Quality. *Campbell County v. Royal*, 720 S.E.2d 90, 99 (Va. 2012); Va. Code § 10.1-1402 (power to abate "nuisances").  The Supreme Court of Virginia has held that the regulatory edifice in the VWMA bars other claims arising from such "occurrences" as they are "to be governed exclusively by the VWMA . . . ." *Campbell County*, 720 S.E.2d at 99.  Indeed, the VWMA specifically addresses public nuisances, and as such bars Bristol TN's claim for public nuisance.

Attempting to dodge the clear consequences of this exclusivity, Bristol TN misconstrues the test for abrogation. *See* Pl.'s Mem. Opp'n to Def.'s Partial Mot. to Dismiss ("Opp'n"), ECF No. 39). As its own cases reveal, express language is not required to supplant a common law cause of action where there is a broad statutory scheme like the VWMA. In creating such a statute— one that specifically addresses the subject matter of the erstwhile common law action—the General Assembly has manifested an intent to solely occupy the field. Bristol TN ignores this logic and erroneously seeks to impose a magic words requirement not recognized by the Supreme Court of Virginia.

The General Assembly constructed a broad and comprehensive scheme for addressing problems that arise from landfills, *including public nuisances*. Public protection from alleged nuisance falls exclusively under the VWMA and Bristol TN's claim for public nuisance must be dismissed.

## ARGUMENT

### I. The Supreme Court of Virginia does not require an express statement for the VWMA to bar a claim for public nuisance.

#### a. There is no "magic words" requirement to supplant a common law claim.

The VWMA bars a claim for public nuisance because it is a comprehensive statute that addresses waste management, including nuisances and threats to public health. Va. Code § 10.1-1400, *et seq*. Though Bristol TN briefly concedes that a statute does not have to expressly state it is supplanting the common law, (Opp'n at 4), it spends much of its Opposition arguing that express language is required for abrogation. That is not the case.

There is no magic language requirement for the General Assembly to abrogate a common law right of action. In short, the General Assembly need not use the word "abrogate." Rather, in determining whether the General Assembly's process of codification and its creation of regulatory

structures has supplanted common law, the Supreme Court of Virginia looks to the scope and structure of a statute. *Cherry v. Lawson Realty Corp.,* 812 S.E.2d 775, 779 (Va. 2018). In considering the scope and structure, the Court noted that abrogation can be "necessarily implied" from the language or structure of a statute. *Id.*[1] To that end, a court may look at whether the statutory scheme "encompass[es] the entire subject covered by the common law [claim]," or whether its "terms are directly and irreconcilably opposed to the [common law] rule." *Isbell v. Comm. Inv. Assocs., Inc.*, 644 S.E.2d 72, 75 (Va. 2007). That implication, scope, and structure can abrogate the common law has been repeatedly recognized by the Supreme Court of Virginia. *Cherry*, 812 S.E.2d at 779; *Isbell*, 644 SE.2d at 75; *Mitchem v. Counts*, 523 S.E.2d 246, 250 (Va. 2000).

      **b.  Plaintiff's own cases reinforce that the scope and structure of a statute determine if common law is abrogated.**

The cases relied upon by Plaintiff follow the rule that the scope of a statute determines whether it abrogates common law. Notably – none of the instances that Plaintiff relies on involve a statute or regulatory scheme as comprehensive as that of the VWMA. For example, in *Cherry,* the Court held that specific statutory carve-outs to liability for mold in rentals did not abrogate

---

[1] Bristol TN repeatedly cites to *First American Title Ins. Co. v. Western Surety Co.*, 722 S.E.2d 637 (Va. 2012) for the proposition that an abrogation clause is required, or that abrogation must be express. That is incorrect. *First American Title* does not state that express language is always required to abrogate common law. To the contrary, it relies on the broader principle that the legislature must "manifest" its intent. 722 S.E.2d at 641 (citing *Mitchem v. Counts*, 523 S.E.2d 246, 250 (Va. 2000)). Second, the Supreme Court of Virginia has repeatedly stated–*including in published decisions issued after First American Title*—that abrogation can be "necessarily implied." *Cherry,* 812 S.E.2d at 779; *Schlegel v. Bank of Am., N.A.*, 628 S.E.2d 362, 368 (Va. 2006) (preempting common law claim overlapping with UCC provisions). Third, the application of law in *First American Title* follows that of other abrogation analyses. It did not create new or different rules. The statute at issue addressed statutory surety bonds but did not address the whole field of common law surety bonds. Because it failed to address an entire class of bonds, it was incomplete and did not abrogate the common law. By contrast, the VWMA *does* manifest the intent to abrogate common law claims encompassing public nuisance. *See* Mem. Supp. at 4-8.

3

unaddressed common law liability. 812 S.E.2d at 778. This, of course, makes sense because the statute established limitations for specific actors in the face of prior broad liability. There is no similar language in the VWMA that highlights any carveout—unsurprising given that it is a cohesive statutory scheme. Similarly, in another of Plaintiff's cited cases, *Crosby v. ALG Tr., LLC*, the Supreme Court of Virginia noted that fiduciary duties survived because when an enactment regulates only "***certain aspects***" of a subject that are not at issue in the common law claim, it does not abrogate common law duties. 822 S.E.2d 185, 191 (Va. 2018) ("We note . . . that most of the regulatory provisions upon which ALG Trustee relies address matters not at issue here.").

By contrast, both the Supreme Court of Virginia and this Court have recognized that the General Assembly occupied the field based on statutory language and structure. For example, in *Collins v. Commonwealth*, the Supreme Court of Virginia held that a comprehensive statutory scheme, like the VWMA, "plainly manifested [the General Assembly's] intent to abrogate the long standing common law rule." *Collins v. Commonwealth*, 720 S.E.2d 530, 533 (2012). In *Collins*, a bail bondsman from North Carolina was convicted of attempted abduction for apprehending a fugitive bailee in Virginia. *Id*. at 531-32. The defendant argued that his conduct was lawful because, at Virginia common law, it was lawful for out-of-state bounty hunters to enter the Commonwealth to apprehend fugitives. *Id*. at 532. However, in 2004, the Virginia General Assembly enacted Va. Code §§ 9.1-185, *et seq*. & 9.1-186, *et seq.*, which gave "the Criminal Justice Services Board (the Board) full regulatory authority and oversight of property and surety bail bondsmen and . . . gave the Board the same authority and oversight of bail enforcement agents, or 'bounty hunters.'" *Id*. at 533. The Court rejected the Defendant's common law-based defense

4

and held that the General Assembly abrogated the common law rule, reasoning: The Court explained:

> It is inconceivable that the General Assembly intended to impose such strict requirements upon in-state bail bondsmen and bounty hunters as those enacted as a result of the Crime Commission report, yet intended to leave out-of-staters with the unfettered right to enter Virginia and apprehend fugitive bailees without being subject to regulation. Such an intent would be completely at odds with the legislatively expressed goal of ensuring 'respectable, responsible, safe and effective bail bonding [and bond enforcement] within the Commonwealth.'"

*Id*. at 271, 720 S.E.2d at 533 (citations omitted).

Similarly, and as a matter of first impression, this Court determined that Virginia common law governing the rights of a creditor against joint debtors was abrogated by statute. *Guertler v. Dupont Cmty. Credit Union*, 552 B.R. 140 (W.D. Va. 2016). At common law, a creditor suing several debtors on a joint contract could not recover a judgment against only some of them; he had to have a joint judgment against all, or he could not have it against any. *Id*. at 144. The General Assembly enacted Va. Code § 8.01-30, which provides that "an action may be maintained and judgment rendered against all liable . . . or any one or any intermediate number" on joint contracts. This Court held that Section 8.01-30's "language and history reflect the Virginia legislature's intent to change the common law," thereby allowing the creditor to bring its subsequent action against a joint debtor not sued in the original action. *Id*. at 145. This Court should follow the same logic and again hold that a comprehensive Virginia statute has abrogated common law.

**II.    The VWMA manifests an intent to abrogate this public nuisance claim.**

The VWMA "encompass[es] the entire subject" of Bristol TN's public nuisance claim. *See Isbell*, 644 S.E.2d at 75. Bristol TN asserts a claim related to seepage, gas monitoring and odor—

all resulting in a public nuisance. The Supreme Court specifically highlighted that such occurrences are encompassed by the VWMA in *Campbell County*. 720 S.E.2d at 99 ("Given the specific and all-embracing coverage under the VWMA and SWMR of the occurrences ***at issue in this case***, we conclude that the General Assembly intended such occurrences to be governed exclusively by the VWMA." (emphasis added)). Indeed, the Act's extensive regulations cover *all* the conduct alleged in Bristol TN's public nuisance claim. *See* Def.'s Mem. Supp. of Partial Mot. to Dismiss ("Mem. Supp.") at 6, ECF No. 22. Therefore, the analysis in *Campbell County* that the VWMA's extensive regulations of landfills require the conduct at issue to be governed exclusively by the VWMA, 720 S.E.2d at 99, equally applies to this public nuisance claim.

Bristol TN attempts to distinguish the language of the VWMA, but those attempts fall short. First, Bristol TN focuses on the VWMA's provision that states—understandably—that issuance of a permit does not entitle violation of other law or property rights. *See* Va. Code § 10.1-1408.1(F); *see also* 9 Va. Admin. Code § 20-81-490(F) ("The issuance of a permit does not authorize any injury to persons or property or invasion of other private rights, or any infringement of federal, Commonwealth, or local law or regulations.") Bristol TN attempts to argue that such language preserves a right to sue. But that is not what the statute says. Rather, its language is a regulatory declaration that there is no entitlement to break the law. A permit is merely a permit—it does not entitle the holder to any extra-legal activities.

The disavowal of license to break the law is decidedly different than a savings clause, which, by contrast, shields rights to sue from a new statutory framework. We know this, in part, because when the General Assembly enacted another comprehensive statutory scheme, the General Assembly expressly provided just such a clause, preserving some individual rights to sue from being supplanted by the Virginia Air Pollution Control Act. *See* Va. Code § 10.1-1320

("Nothing in this chapter shall be construed to abridge, limit, impair, create . . . substantively or procedurally the right of any person to damages or other relief on account of injury to persons or property.")  The General Assembly provided no such provision in the VWMA because it intended the Act to be broad and comprehensive.

The Supreme Court of Virginia has already rejected Bristol TN's strained interpretation of the law.  *Compare* Br. of Appellees, *Campbell Cty. v. Royal*, 2010 WL 8654650, at *39-40 (Va. Nov. 29, 2010) (arguing that Va. Code § 10.1-1408.1(F) defeated the notion that the VWMA precluded liability) *with* 720 S.E.2d at 99 (concluding the General Assembly manifested an intent that the release of groundwater into a solid waste facility would be governed exclusively by the VWMA).

Second, Bristol TN attempts to undermine the Act by relying on *Resource Conservation Mgmt. Inc. v. Bd. of Supervisors of Prince William County*, 380 S.E.2d 879 (Va. 1989), which is also irrelevant to the analysis here.  *See* Opp'n at 6.  In *Resource Conservation*, the Supreme Court of Virginia addressed whether the VWMA preempted a municipality's ability to regulate its own waste management system.  380 S.E.2d at 883.  The Court found that it did not based on the VWMA's language evincing the intent "to make state action consistent with local regulation." *Id.* Such language conveyed a clear intent to preserve and co-exist with local regulation.  This is irrelevant to current considerations as there is no language in the VWMA evincing any intent to permit private parties to file public nuisance lawsuits over landfills.  *See* Mem. Supp. at 4-8.

**III.    *Campbell County* necessitates a finding that the VWMA abrogates this public nuisance claim.**

Bristol TN miscalculates *Campbell County*'s applicability. *See* Opp'n at 8-10. Whether the claim precluded in *Campbell County* arose from common law or statute is irrelevant.[2] In *Campbell County*, the Supreme Court of Virginia held that the statutory claim asserted could not go forward because the conduct at issue "f[e]ll [instead] squarely within the ambit of the VWMA and SWMR." 720 S.E.2d at 99 ("That is, the VWMA and SWMR extensively govern the operation of a solid waste disposal facility and impose requirements designed to protect groundwater and to prevent seepage of leachate and landfill gas into the groundwater."); *id.* ("Given the specific and all-embracing coverage under the VWMA and SWMR of the occurrences at issue in this case, we conclude that the General Assembly intended such occurrences to be governed exclusively by the VWMA.").

Here, the conduct at issue also falls "squarely within the ambit of the VWMA and SWMR," Mem. Supp. at 4-5. Thus, like the conduct at issue in *Campbell County*, the conduct alleged here is "governed exclusively by the VWMA."[3] *See generally* Mem. Supp.

Bristol TN asks this court to ignore *Campbell County* and instead look to a 2007 unreported Virginia Circuit Court case. *See* Opp'n at 8 (citing *Wyatt v. Sussex Surry, LLC*, 74 Va. Cir. 302 (Surry County 2007)). *Wyatt*, however, not only predated *Campbell County*, but it involved a different set of regulations not at issue here. *See* 74 Va. Cir. 302, 305 (Va. Cir. 2007) (holding

---

[2] Indeed, Bristol TN spends most of its Opposition miscasting Bristol VA's argument that the VWMA abrogates the public nuisance claim *at issue* with the notion that it abrogates common law claims *generally*. *See*, *e.g.*, Opp'n at 6 (arguing that Bristol VA "cites to no authority supporting its assertion" that the General Assembly "intended to abrogate common law claims . . ."); *id.* at 8 (arguing that "the mere fact that the VWMA and its implementing regulations extensively regulate landfills and provide enforcement powers to state agencies does not show that the General Assembly plainly manifested an intent to abrogate common law claims based on the wrongful operation of landfills.").

[3] Bristol TN's argument that "regulations [interpreting the VWMA] do not demonstrate an intent to eliminate common law claims for nuisance," *see* Opp'n at 7, inexplicably ignores the holding in *Campbell County* and other relevant case law. *See also*, *e.g.*, *Schlegel*, 628 S.E.2d at 365-68 (holding common law claims preempted when allegations "f[e]ll squarely within the confines" of the statute).

that Virginia regulations on biosolid disposal did not preempt common law claims generally). And, unlike the Supreme Court of Virginia's holding in *Campbell County* which found that the General Assembly intended the conduct at issue to be *entirely* governed exclusively by the VWMA, 720 S.E.2d at 99, the *Wyatt* court found to the contrary because "the statutes *do not encompass the entire subject covered by common law*." 74 Va. Cir. at 305 (emphasis added). *Campbell County* cannot be cast aside. The VWMA abrogates Plaintiff's public nuisance claim.

### IV.     The remedies in the public nuisance claim and the VWMA overlap.

The General Assembly passed the VWMA "to protect the Commonwealth's environment, thereby promoting the health and well-being of her citizens." *Browning-Ferris Indus. v. Residents Involved in Saving the Env't, Inc.*, 492 S.E.2d 431, 435 (Va. 1997). Thus, the General Assembly delegated authority to the Virginia Waste Management Board, under the purview of the Virginia Department of Environmental Quality ("DEQ"), to regulate alleged "nuisances" arising from landfills with the purpose of promoting the health and well-being of all citizens.

The DEQ has the authority under the VWMA to abate the specific harms Bristol TN alleges stem from the "public nuisance," *see* Compl. ¶¶ 136-44. *See* Va. Code § 10.1-1402(21). Yet, Bristol TN takes the position that its desire for monetary damages precludes the VWMA's abrogation of its public nuisance claim. *See* Opp'n at 11 (distinguishing *Schlegel*, 628 S.E.2d at 368, which involved a statutory preemption of a common law claim, by arguing "the statute at issue provided specific remedies – *to the plaintiff* – for the same conduct on which some of the plaintiff's common law claims were based." (emphasis added)).[4] Bristol TN fails to provide any support for the proposition that a request for monetary damages can preclude statutory abrogation of a claim. What matters is that the VWMA provides the mechanisms for abating alleged

---

[4] The Supreme Court of Virginia in *Schlegel* held that common law claims were preempted by statute because, *inter alia*, "the remedy [sought] in his common law claims would conflict with the statutory remedy." 628 S.E.2d at 368.

9

nuisances, which would extinguish any alleged harms Bristol TN puts forward.  And the VWMA expressly provides avenues by which private citizens may become involved in the DEQ's enforcement process.  *See* Mem. Supp. at 6 n.2.

Because the proper remedy for common law public nuisance conflicts with the statutory remedy under the VWMA, Plaintiff's public nuisance claim cannot go forward.  *Schlegel*, 628 S.E.2d at 368.

## CONCLUSION

For the reasons stated in its Memorandum in Support and stated herein, Bristol VA respectfully requests that the Court dismiss Count III of the Complaint with prejudice.

Dated: September 9, 2022

Respectfully submitted,

THE CITY OF BRISTOL, VIRGINIA

/s/  Erin B. Ashwell
John D. Adams (VSB 65203)
Justin D. Howard (VSB 94108)
Erin B. Ashwell (VSB 79538)
Christian E. Henneke (VSB 45457)
McGuireWoods LLP
Gateway Plaza
800 E Canal Street
Richmond, VA 23219
(804) 775-1000 (telephone)
(804) 775-1061 (fax)
jadams@mcguirewoods.com
jhoward@mcguirewoods.com
eashwell@mcguirewoods.com
chenneke@mcguirewoods.com

*Counsel for Defendant, The City of Bristol, Virginia*

## CERTIFICATE OF SERVICE

      I hereby certify that on September 9, 2022, I caused the foregoing to be filed with the Clerk of the U.S. District Court for the Western District of Virginia using the Court's CM/ECF system, which will electronically serve copies of the same on counsel for all parties.

<u>/s/ *Erin B. Ashwell*</u>
Erin B. Ashwell

*Counsel for Defendant, The City of Bristol, Virginia*