# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **THE CITY OF BRISTOL, TENNESSEE,** ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> **THE CITY OF BRISTOL, VIRGINIA,** ) <br> ) <br> Defendant. ) | Case No. 1:22CV00023 <br><br> **OPINION AND ORDER** <br><br> Judge James P. Jones |

*Michael E. Lacy and Andrea W. Wortzel,* Troutman Pepper Hamilton Sanders LLP, *Richmond, Virginia, and E. Lynn Dougherty, Bristol, Tennessee, for Plaintiff; Erin B. Ashwell, John D. Adams, and Justin D. Howard,* McGuireWoods LLP, *Richmond, Virginia, for Defendant.*

The City of Bristol, Tennessee (Bristol Tennessee) has sued its neighboring City of Bristol, Virginia (Bristol Virginia) stemming from Bristol Virginia's operation of a municipal landfill. Bristol Virginia has moved to dismiss Count Three of the Complaint, the Virginia common law public nuisance claim. For the reasons that follow, I will deny Bristol Virginia's Partial Motion to Dismiss.

I.

The Complaint alleges the following facts, which I must accept as true at this point in the case for the sole purpose of deciding the Motion to Dismiss. Bristol Virginia owns and operates a Virginia Department of Environmental Quality (DEQ)-

permitted solid waste landfill.[1]  The landfill is located in an abandoned rock quarry approximately 1,000 feet from Bristol Tennessee.  Since late 2020, noxious odors have emanated from the landfill, which has caused living and working in parts of Bristol, Tennessee, to become "almost intolerable."  Compl. 1, ECF No. 1.  The odors have been described as "putrid and noxious, including odors of chemicals and gas."  *Id.* ¶ 121.

Over the past two years, these odors have impacted Bristol Tennessee's ability to provide services to its residents.  Staff and firefighters at two Bristol Tennessee fire stations located near the landfill have complained of nosebleeds, headaches, and nausea.  Firefighters have asked to transfer to other stations.  Teachers and students at several Bristol, Tennessee, schools have experienced health issues, as well as employees and citizens at a municipal community center.  As a result, Bristol Tennessee has spent thousands of dollars on air purifiers for the affected fire stations, community center, and schools in an attempt to mitigate the odors.  The city has also spent $30,000 on an air purifier assistance program and over $5,000 on air testing at schools.  Moreover, city employees have been forced to dedicate time to address landfill issues.

---

[1] The federal Environmental Protection Agency has delegated authority to DEQ to issue permits to Virginia landfills and enforce permits and associated solid waste and air emissions regulations.  Compl. ¶ 18, ECF No. 1.

The smell has also undercut Bristol Tennessee's campaign to attract and keep businesses and residents. A local real estate developer stated that the odors need to be resolved before they would consider developing property in the city. The municipality has earned a reputation of being a "smelly city." *Id.* ¶ 140.

In recent months, thousands of odor complaints have been logged through the landfill's website, to DEQ, to the Tennessee Department of Environment and Conservation, and on community pages. *Id.* ¶¶ 86, 122. Bristol Virginia received 2,147 complaints in November 2021 alone. *Id.* ¶ 86. Those affected have reported experiencing migraines, respiratory irritation, nausea, fatigue, and other health conditions.

DEQ first began noticing an uptick of odor complaints in the fall of 2020. In February 2021, after finding recordkeeping violations, DEQ issued its first notice of violation to Bristol Virginia. Since then, DEQ has issued several more notices, citing various violations of the landfill's air and solid waste permits, including elevated gas wellhead temperatures, excess oxygen concentrations in gas wellheads, positive pressure in gas wellheads, and repeated failures to monitor the wellheads and the landfill's gas flare. DEQ has also issued multiple warning letters, and a local utility authority has issued its own notices of violation due to the landfill's failure to comply with discharge limits. However, neither DEQ nor any other regulator has initiated legal proceedings against Bristol Virginia.

In March 2022, the DEQ convened an expert panel, an "extraordinary step" to "address the ongoing violations, mitigate the noxious odors coming from the Landfill, and develop plans for closing the Landfill." *Id.* at 2–3. That panel issued its report in April 2022, in which it recommended that Bristol Virginia take certain actions "***immediately***" to address the odors and concluded that Bristol Virginia should not accept any more waste at the landfill. *Id.* Because Bristol Virginia had "done virtually nothing to implement the recommendations of the expert panel," *id.*, Bristol Tennessee filed the instant action in May 2022, alleging that Bristol Virginia had violated and is continuing to violate the Clean Air Act, 42 U.S.C. §§ 7401–7671q, the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901–6992k, and Virginia common law by creating a public nuisance because of the odors.[2] Bristol Virginia has partially moved to dismiss the Complaint, arguing that the common law nuisance claim is abrogated by state statute. The Partial Motion to Dismiss has been argued and fully briefed and is now ripe for decision.

## II.

Federal pleading standards require that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint

---

[2] In June 2022, the parties consented to the entry of a Preliminary Injunction Order, which requires Bristol Virginia to meet certain prescribed deadlines in an attempt to mitigate the problem. Prelim. Inj. Order, ECF No. 8.

to determine whether the plaintiff has properly stated a claim. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a motion to dismiss, the plaintiff must "state[ ] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon its "judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

In evaluating a pleading, the court accepts as true all well-pled facts. *Id.* A complaint does not need detailed factual allegations to survive a motion to dismiss. However, it must have more than labels and conclusions or a recitation of the elements of the cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

### III.

I begin with a brief overview of common law public nuisance and the Virginia Waste Management Act (Act or VWMA), Va. Code Ann. § 10.1-1400–1458.

#### A.   *Common Law Nuisance and the VWMA.*

"[N]uisance includes everything that endangers life or health, or obstructs the reasonable and comfortable use of property." *Collett v. Cordovana*, 772 S.E.2d 584, 587 (Va. 2015).³ The term encompasses offensive and excessive odors. *See G.L.*

---

³ I have omitted internal quotation marks, citations, and alterations throughout this opinion, unless otherwise noted.

*Webster Co. v. Steelman*, 1 S.E.2d 305, 311 (Va. 1939). A public nuisance is a "condition that is a danger to the public." *Taylor v. City of Charlottesville*, 397 S.E.2d 832, 835 (Va. 1990). It is a "public right or privilege common to every person in the community [that] is interrupted or interfered with" or an "annoyance [ ] that is common to the public generally," as opposed to one that affects "only [ ] individual property rights." *City of Va. Beach v. Murphy*, 389 S.E.2d 462, 463–64 (Va. 1990).

Turning to the statute at issue, the VWMA governs Virginia landfill operations. Va. Code Ann. § 10.1-1408.1. The Act establishes the Waste Management Board (Board), which is authorized to, *inter alia*, "control waste management activities in the Commonwealth," and "promulgate and enforce regulations" as applicable to the operation of landfills. *Id.* § 10.1-1402(1), (11). It requires landfills to be permitted, and expressly provides that the issuance of a permit does not authorize any injury to private property, invasion of personal rights, or infringement of federal, state, or local law. *Id.* § 10.1-1408.1(F). The Act also specifies certain remedies for violations of its provisions, the accompanying regulations, and permit conditions. For example, it gives the Attorney General authority to bring a civil action in an appropriate circuit court, which may result in civil penalties which are paid into a state emergency response fund. *Id.* § 10.1-1455(A).

The Act and the Board's implementing regulations include specific references to a nuisance as "an activity that unreasonably interferes with an individual's or the public's comfort, convenience or enjoyment such that it interferes with the rights of others by causing damage, annoyance, or inconvenience." 9 Va. Admin. Code § 20-81-10. For example, the Board has the power to "[a]bate hazards and nuisances dangerous to public health, safety or the environment, both emergency and otherwise, created by the improper disposal, treatment, storage, transportation or management of substances within the jurisdiction of the Board," including solid waste. Va. Code Ann. § 10.1-1402(21). And the Board requires landfill operators to effectively control odors "so they do not constitute nuisances or hazards." 9 Va. Admin. Code § 20-81-140(A)(10).

I turn now to the specifics of the defendant's Motion.

### B. Abrogation of Common Law.

Bristol Virginia does not contend that Bristol Tennessee has failed to allege sufficient facts to support a public nuisance cause of action, but rather that the VWMA abrogates the common law.

"The highest court of the State is the final arbiter of what is state law." *Graham v. Dhar*, 33 F.4th 178, 182 (4th Cir. 2022). As highlighted by the defendant, the Supreme Court of Virginia has interpreted the VWMA. In fact, that court has opined that VMWA's coverage is "specific and all-embracing" and that the Act

"extensively govern[s] the operation of a solid waste disposal facility and impose[s] requirements designed . . . to prevent seepage of leachate and landfill gas." *Campbell Cnty. v. Royal*, 720 S.E.2d 90, 99 (Va. 2012).  Based on this reasoning, it has concluded that landfill seepage is "to be governed exclusively by the VWMA." *Id.*  But when the court concluded as such, it was because it had been tasked with determining whether Virginia's Oil Discharge Law applied to contaminated, landfill-derived groundwater. *Id.* at 99–100.  The court came to its conclusion by examining the two different statutory schemes at issue, *id.* at 100, not by analyzing Virginia's approach to common-law abrogation.  Thus, I do not find the language from the *Campbell County* decision to be dispositive here.  Accordingly, I will rely on established principles of statutory interpretation in Virginia.  *Graham*, 33 F.4th at 182 (indicating that when a state's highest court has not interpreted state law, federal courts must apply principles of statutory interpretation); *Thompson v. Ciox Health, LLC*, 52 F.4th 171, 174 (4th Cir. 2022) ("In interpreting a state law, we apply the statutory construction rules applied by the state's highest court.").

It is well-established in Virginia that "[t]he common law of England, insofar as it is not repugnant to the principles of the Bill of Rights and Constitution of this Commonwealth, shall continue in full force within the same, and be the rule of decision, except as altered by the General Assembly."  Va. Code Ann. § 1-200.  Accordingly, Virginia statutes in derogation of the common law must be strictly

-8-

construed. *Cherry v. Lawson Realty Corp.*, 812 S.E. 2d 775, 779 (Va. 2018). A statute "will not be held to change the common law unless the legislative intent to do so is plainly manifested" as "expressly stated in the statute or necessarily implied by its language." *Id.* That is because it is presumed that the legislature did not intend to abrogate common law. *Id.* Thus, "[w]hen an enactment does not encompass the entire subject covered by the common law, it abrogates the common-law rule only to the extent that its terms are directly and irreconcilably opposed to the rule." *Id.* at 377.

It is undisputed that the VWMA does not expressly state that it abrogates common law nuisance actions. Rather, Bristol Virginia contends that the VWMA "fully encompasses the entire subject" of public nuisance and that the legislature has "plainly manifested" its intent to abrogate such common claims. Def.'s Mem. Supp. 5–6, ECF No. 22. I disagree.

The VWMA and the applicable regulations certainly give the Board authority to abate nuisances, and direct landfill operators to effectively control odors so as not to create nuisances. Va. Code Ann. § 10.1-1402(21); 9 Va. Admin. Code § 20-81-140(10). Read along with the enforcement section, that means the Attorney General has the authority to institute civil actions in the name of the Commonwealth for conduct that may involve the nuisances, Va. Code Ann. § 10.1-1455(A), and under certain circumstances, the Board has authority to revoke a landfill's permit for

creating a nuisance, *id.* § 10.1-1409. But the existence of these provisions does not automatically mean public nuisance is subsumed by the statute. *Cf. Crosby v. ALG Trustee, LLC*, 822 S.E.2d 185, 191 (Va. 2018) (noting that extensive regulation "does not translate to a broad abrogation"). The provisions create authority for Board and Attorney General action that might otherwise be absent and define the standards under which Virginia landfills must operate, but I find that they do not occupy the entire field of common law public nuisance. *Cf. Res. Conservation Mgmt., Inc. v. Bd. of Supervisors*, 380 S.E.2d 879, 884 (Va. 1989) ("[W]hen the General Assembly intends to preempt a field, it knows how to express its intention.").

Bristol Virginia contends that the General Assembly "has plainly manifested its intent to remedy Plaintiff's claim *solely* through enforcement action by the Board." Def.'s Mem. Supp. 6, ECF No. 22. But noticeably absent from the VWMA is any guaranteed process for persons damaged by landfill operations. The VWMA's regulations certainly suggest that citizens can submit complaints to DEQ and that DEQ will investigate and respond. 9 Va. Admin. Code § 20-81-70(D). But citizens cannot force DEQ's hand, as is demonstrated by the fact that no enforcement action has been filed here, nor does the Act create an administrative complaint or hearing process for injured persons. Furthermore, the civil penalties provided by the Act are not compensatory in nature but are penalties payable to the Commonwealth

for deposit in a state fund. Va. Code Ann. § 10.1-1455. Thus, this is not a scenario in which the provided remedy expressly addresses a damaged party's rights. *See Schlegel v. Bank of Am., N.A.*, 628 S.E.2d 362, 366–68 (Va. 2006) (finding that the statutory provision at issue provided the injured person a remedy for a particular wrongdoing). In other words, I do not find that the common law claim fits "squarely within the confines" of the VWMA. *Id.* at 368. The fact that the legislature has provided a statutory remedy for a state entity to enforce its permitting authority does not necessarily manifest a clear intent to create an exclusive remedy and rid injured persons of common law established redress.

And this is not a case in which the Act and regulations create inconsistencies with the common law, as was the issue in *Collins v. Commonwealth*, 720 S.E.2d 530 (Va. 2012). There, the Supreme Court of Virginia concluded that the General Assembly plainly manifested its intent to abrogate the common law rule granting unlicensed, out-of-state bondsmen arresting authority in Virginia. The court cited to the fact that the legislature had adopted a statute that required nonresident bondsmen seeking a license to satisfy resident licensure requirements. *Id.* at 533. The court explained how common law was "completely at odds" with the legislation and that it was "inconceivable" that the legislature would impose strict requirements on in-state bondsman but not out-of-state bondsmen. *Id.* Here, common law public

nuisance claims do not conflict with the ability of the Board to enforce statutory landfill permit requirements.

Bristol Virginia also argues that the legislature manifested its intent to abrogate by omitting an express savings clause, such as that applicable to the Air Pollution Control Board, Va. Code Ann. § 10.1-1320 ("Nothing in this chapter shall be construed to abridge, limit, impair, create, enlarge or otherwise affect substantively or procedurally the right of any person to damages or other relief on account of injury to persons or property."), and the express private right of action found within VWMA's litter control provisions, *id.* § 10.1-1418.1(B) ("Any owner of real estate in this Commonwealth, including the Commonwealth or any political subdivision thereof, upon whose property a person improperly disposes of solid waste without the landowner's permission, shall be entitled to bring a civil action for such improper disposal of solid waste."). What Bristol Virginia is asking me to do is to transform silence and an absence of irreconcilable conflict into manifest intent based on other portions of the Virginia Code. Though the omission of language present in other statutes can manifest a contrary intent, *JSR Mechanical, Inc. v. Aireco Supply, Inc.*, 786 S.E.2d 144, 147 (Va. 2016), I do not find such intent here considering Virginia's rule of strict construction and presumption against common law abrogation.

Moreover, the VWMA states that the issuance of a permit does not "authorize any injury to private property or any invasion of personal rights or any infringement of federal, state, or local law or regulation." Va. Code Ann. § 10.1-1408.1(F). This language further supports the conclusion that common law has not been abrogated. *Cf. Country Vintner, Inc. v. Louis Latour, Inc.*, 634 S.E.2d 745, 752 (Va. 2006) (citing to language in the Wine Franchise Act establishing conditions for wine distribution "to the full extent consistent with the laws . . . of the Commonwealth" and reasoning that this language supported the conclusion that the statute did not abrogate common law).

* * *

I emphasize that I only decide that Bristol Tennessee's public nuisance claim is legally sufficient to survive the present motion. The case will proceed, and I make no prediction on its ultimate resolution. *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) ("A Rule 12(b)(6) motion to dismiss does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses."). It is important for the public interest that it be resolved as soon as reasonably possible, and I urge the parties to cooperate to that end.

IV.

For the foregoing reasons, it is **ORDERED** that the defendant's Partial Motion to Dismiss, ECF No. 21, is DENIED.

-14-

ENTER: December 21, 2022

/s/ JAMES P. JONES
Senior United States District Judge